Joshua Glellen appearing on behalf of Mr. Miken. May it please the court, I would like to call particular attention to this court's more recent treatment cited in the reply brief, in fact in the opening brief as well. The court's recent opinion in the second Sechrist case that involved the same claimant's attorney, Mr. Rabinowitz, and the same administrative law judge, ALJG. Mr. Rabinowitz did move to recuse Judge Gee in this case and she issued an order that's in the record denying that and taking issue with all of the claims that her treatment of Mr. Rabinowitz had shown bias and held onto the case and then decided it this way. This court has looked at what she did to Mr. Rabinowitz in the Sechrist case and in a published opinion has found that she did indeed show rather extreme disapproval of Mr. Rabinowitz. That's not the issue before the court here. I think the relevance of it and the only reason I call it to the court's attention here is that to the extent that deference is ordinarily due to the trier of the fact, it is singularly inappropriate to give it to Administrative Law Judge Gee in a case with Mr. Rabinowitz representing the injured worker. I do think, as Mr. Rabinowitz said in the reply brief, that the issues here are not really, at least except for the 11 missed days and the initial period after the injury before Mr. Mikan saw a doctor. That may be a substantial evidence question to some extent and again I don't think Judge Gee's resolution of it is entitled to the deference ordinarily due to the fact finder even on that. But that is, I have to say, a minor issue compared to the presidential novel legal issues presented to this court for the first time that any court of appeals has addressed them on the forfeiture provision of Section 74 of the Longshore Act, Section 9074 of Title 33. Reasonable refusal to submit to a medical exam, defense medical exam, of course ALJG referred to it throughout as an IME or independent medical exam and of course it is no such thing. Words matter and it was not an independent exam. These were medical exams by doctors appointed to the task by the insurance company. It's not independent at all. The Longshore Act does have provisions for independent medical exams by a physician appointed by the Department of Labor. They were not involved with either of the parties. None of these exams in issue here was an independent medical exam. I didn't understand your brief to make an argument that because it wasn't independent that itself precluded the exam. Oh, no, it certainly does not. We certainly would not dispute that the insurance carrier has the right to have defense medical exams almost at any time. I mean, they can't do it repeatedly in short order. But if enough time has gone by since the last one that the condition might have changed, yes, they're entitled to another defense medical exam. But the act puts two limits on the sanction for refusal to submit to such an exam. First, the refusal has to be unreasonable. But the board has interpreted that to be an objective test. And second, this section 74 contains yet another qualifier at the end unless the circumstances justified refusal and the benefits review board. And the leading hate that the board is perjured, which is cited throughout briefs. These those are two tests. The first unreasonable is objective. And the second unjustified by circumstances is subjective question. Well, I don't see how advice of an attorney whom the claimants sought out cannot be a circumstance that subjectively justified refusal to show up for an exam. Now, the exam, the first exam and question. Oh, let me emphasize before I even go on. There were two other defense medical exams in between the first and the fourth here. That are the subjects of these forfeiture rulings by the Ministry of Law Judge G. And the claimant showed up for those. No problem. Cooperated. None of the neither of those doctors required him to sign any papers or fill out any extensive health inventory forms or to submit him to further diagnostic testing. X-rays is what apparently he had in mind. And the judge that the doctor, excuse me, who wanted that permission signed by the claimant without an orthopedic type injury to ask for x-rays. Oh, it is. And there were x-rays. If they wanted, if they needed to conduct other x-rays, that would be fine. But he didn't do it. There are other. He didn't sign so they couldn't do it. He did eventually show up for the exam after the ruling that it was unreasonable for him to refuse. Also, would you have given the same kind of legal advice that Mr. Rabinowitz was giving here? Or would you have told your client, just go ahead and do it. And, you know, let's just move this thing along. This isn't that out of question. You can't find the name of the doctor in Oregon. You're on the border between Washington and Oregon. It's not that big a deal. The form might say this or that. Just go ahead and sign it. It's not that big a deal. And, you know, nobody imposed sanctions on him. It's just that while you're contesting things, you don't get the benefits. What's wrong with that? Well, first, that's not what the statute provides, really. I think if you read Section 74, it contemplates that benefits will not be paid and will be forfeited for the period that such refusal continues. Now, I think that contemplates a prior determination by someone that it's not reasonable for you not to show up. And the claimant here never got that opportunity. The board has not subscribed to that. I do think that's what Section 74 contemplates. That is more parallel to the conditions under the Federal Rules of Civil Procedure. If you don't show up for an exam that you have been asked to show up for, the party who wanted the exam goes to the judge and gets an order for you to show up. And you have the opportunity to contest that order or to put conditions on that order. Totally different procedures in the Federal Rules of Civil Procedure and this. We're trying to complicate this, not overcomplicate it. It's too late for that. The ALJs have enacted rules that make the litigation of long-short cases before them just as formal and complicated, time-consuming and expensive as the Federal Rules of Civil Procedure. You can see the full discovery and the often pushing a year between the time a case is referred for adjudication by the ALJs. Did you want to reserve any time for rebuttal? Because you're almost out of time, so I wanted to check. I would indeed like to save one minute. Thank you. Thank you. Am I there? You're past it, but we'll give you a minute for rebuttal. Thank you very much. Good afternoon, Your Honors. May it please the Court, Stephen Baratski on behalf of the employer ICTSI. Since his August 2014 knee injury, work-related knee injury, Mr. Mikan has received 345 weeks of indemnity benefits and counting. Those benefits are still ongoing. Several years ago, his benefits were suspended for a total of 36 weeks when he refused to attend two medical exams arranged by the employer. As has been discussed, under the Longshore Act, Congress gave the employer the right to arrange a medical examination by a physician selected by the employer and also imposed an obligation or duty on the worker obtaining those benefits under the Act to cooperate and attend the exam unless two conditions are met. Number one, the examination itself is found to be unreasonable, or number two, if the worker had good cause or reasonable explanation for not attending. So we have two missed exams here. The first one is the February 11th evaluation. There's no dispute, Mr. Mikan received two forms of notice, was provided the doctor's name, location, and sufficient information to understand the purpose of the evaluation. So I'm sorry to take you out of order, but I have a question about a different one of the claims and we don't have that much time. So could I just ask you about the period of time before the first doctor's appointment and the determination that he couldn't meet the standard of disability during that time? I'm wondering if you could speak to whether the ALJ's analysis of that is consistent with our more recent decision in Jordan versus SSA terminals, if you're familiar with that case? Because it seems to me that the ALJ didn't, what the ALJ said is not consistent with Jordan. Your Honor, I am actually not currently familiar with that decision. But, you know, the analysis there is that I think there's a fundamental... Jordan says you don't have to be entirely unable to work if you're in a lot of pain. If you try to work, that's enough. And it seems to me that the ALJ said he had to be entirely unable to work. And so it seems like we may need a remand, at least on that issue. And, Your Honor, I don't think that the facts necessarily support that. I think what the administrative judge and the board also acknowledged was that there was no physician which acknowledged that Mr. Mikan had an inability to work during that period of time. But I don't think that's required under Jordan. If he was in a lot of pain, that could have been enough. And it seems that Dr. Harp's notes actually confirm that he was in pain, or at least support the idea that he was in pain. Well, and the administrative judge also made a credibility finding and considered what he was actually doing during that period of time. He was intermittently working. He was a foreman who could delegate work. And when he was not working, he was actually doing stuff on his property at home. And she found that that was inconsistent with his stated purpose of an inability to work. So I don't believe that there is a need to remand the case. I think that based on your description of the Jordan analysis, I think that Mr. Mikan's situation is fundamentally different, where there was a finding of credibility that he didn't credibly establish limitations consistent with an inability to work. And more often than not, all the worker has to do is go to his physician and have that physician endorse the finding that, hey, there's some restrictions. It was reasonable for this worker not to not to work. And for whatever reason, that was not met in this case. And I think that the well, it was I mean, it sort of was he did go to the doctor. Then the doctor, I think at that point said, don't work. It's just a question of the 10 days before he went to the doctor. Correct. And during that 10 days, he was intermittently working and also doing other physical things on his property at home. And I think fundamentally, the administrative law judge found that he didn't credibly establish a restriction or inability to to work in any capacity. So some of some of the determinations here seem like ones that we can assess fairly easily from the record, like whether it's reasonable to not go to a doctor when you don't know their name. It seems like that's something we can kind of think about ourselves. Whether he's credible is a more subjective thing that maybe the judge was assessing. And I do have some concern about whether there was animosity between this judge and this lawyer. So can you speak to whether this judge was giving an unbiased determination when there were judgments to be made? Your Honor, I'm certainly familiar with administrative law judge and Mr. Rabinowitz reading through the decision. You know, there are some layer of frustration with Mr. Rabinowitz's tactics, but I don't think that unjustly characterized her treatment of of Mr. Mike. And I don't think that she penalized Mr. Mike for either bad advice that Mr. Rabinowitz was providing or the other delay tactics that he administered. So I don't think that there's sufficient evidence, either from the tone of her argument, which was fundamentally at issue in the Seacrest case. So I don't think that there is enough evidence presented, either in the tone of the opinion or the rulings that were made, to indicate that Judge Cheat didn't give Mr. Mike and even Mr. Rabinowitz a fair shot at substantiating benefits in this case. If we thought there were issues that needed to be remanded, should we send it to a different judge? I suspect you have to, Judge Cheat retired several years ago. So she is no longer hearing cases. Again, it's the employer's position that that's not a necessary step in this case. But certainly the board addressed and was aware of the Seacrest decision and didn't have any issue affirming her finding that he wasn't entitled to benefits during that initial period of time. And again, he's already substantiated benefits for many other periods of time. There's just really three periods that he wasn't awarded compensation for. If I can, I'll revisit some of the IME, Independent Medical Evaluation, or Defense Medical Evaluation. I don't think it matters all that much what you call them. I think fundamentally the employer has a right to arrange those evaluations. And the findings in this case indicate that the reasons why Mr. Mike failed to attend the two exams were unreasonable. And those findings, I would argue, are not reviewed de novo as is postulated in an appellant's brief, but rather reviewed for substantial evidence. It's a mixed question of law and fact. Largely the circumstances dealing with the failure to attend the exams are undisputed. The law is undisputed. So I would submit that the findings with regard to both independent medical exams and the failure to attend are supported by substantial evidence. There are several points made in appellant's brief that somehow wanted to impose an obligation upon the employer or the processing agent without any additional communication from Mr. Mikan to go ahead and reschedule the evaluations. Why did it wait so long to reschedule them? I think it's critical to understand that whenever these workers don't appear for evaluations, there's substantial cost involved. They get hit with cancellation fees, and so there's not a lot of incentive to keep rescheduling these evaluations if there's no indication that the worker, in this case Mr. Mikan, is going to attend. All he had to do really was pick up the phone or have his attorney pick up the phone, make a phone call to end the non-cooperation, and that would have lifted the suspension of benefits. So again, his conduct, his attorney's conduct, which is imputed to him, was unreasonable. Those findings by the Board and Administrative Law Judge are supported by substantial evidence. Mr. Mikan's remedies are not with this forum. There's other forums that he can adjudicate bad advice from legal counsel, but this is not one of them. Thank you, Your Honors.  Thank you. Let me start with the fact that, contrary to what you just heard twice, Mr. Mikan did not refuse to attend the last of these defense medical exams. He did show up for it. The things that he refused to sign without his attorney having seen them first, which I contend is not game-playing as Judge Gee referred to it, but is sensible compliance with your attorney's advice, the forms that he did not sign, did not fill out and did not sign, the doctor later said he didn't need. They were not central to that exam. The doctor simply refused to examine him, to perform the physical exam that Mr. Mikan had shown up to submit to. I also would point out that although the ALJ discounted the regulation that requires the party requesting a medical exam of the other party, to give certain information in advance, the current version of that, she found, was not applicable because it had not yet gone into effect at the time of these early events in this case, but never made reference to the predecessor provision, which had the same provisions. It was the former 29 CFR section 18.19.3. Thank you. So we're over your minute by almost a minute, so I think I need to cut you off. Thank you both sides for the helpful arguments. This case is submitted.
judges: WALLACE, FRIEDLAND, Lasnik